FILED
JUL 3 1 2024
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO

1:24 CV 01313

**Sarah Buntura,**
Plaintiff,

JUDGE CALABRESE

v.

MAG JUDGE ARMSTRONG

**Ford Motor Company
and Yale Background Screening Services,**
Defendants.

**Civil Action No.**

# COMPLAINT FOR RETALIATION, DISCRIMINATION, AND UNFAIR EMPLOYMENT PRACTICES

## I. Introduction

**1. Plaintiff**, Sarah Buntura, brings this action against **Defendants**, Ford Motor Company and Yale Background Screening Services, for engaging in discriminatory retaliation, failure to provide adverse action notice, and other violations during the hiring process.

2. Plaintiff seeks relief for the significant financial and emotional harm caused by Defendants' actions.

## II. Jurisdiction and Venue

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. The claims arise under Title VII of the Civil Rights Act of 1964, the Fair Credit Reporting Act (FCRA), and other federal statutes.
4. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred within this district, and the Defendant's conduct business in this district.

## III. Parties

5. **Plaintiff**: Sarah Buntura, a resident of Brunswick, Ohio. 6. **Defendant**: Ford Motor Company, a corporation with its principal place of business in Dearborn, MI conducting Business in Brook Park, Ohio. 7.

**Defendant**: Yale Background Screening Services (now S2Verify), a corporation with its principal place of business in Alpharetta, Georgia.

## IV. Facts

8. On March 13, 2024, Plaintiff applied for an Hourly Production Team Member Position at the Ford Motor Cleveland Engine Plant.
9. On March 20, 2024, Plaintiff received an offer letter signed by Ms. Kristen Onesko and accepted it within the specified three-day period, providing the necessary information to

Yale Background Screening Services for a background check.

10. On March 27, 2024, Plaintiff emailed Ms. Onesko to express gratitude and request further information to notify her current employer, but received no response. 11. On April 9, 2024, Plaintiff contacted Yale Background Screening Services, confirming that her background check was complete and sent to Ford in the first week of April. Plaintiff immediately informed Ms. Onesko of this but was ignored.

12. On May 6, 2024, Plaintiff contacted Union President Ms. Wilma Thomas about her concerns, copying Ms. Onesko, only to find her emails were blocked.

13. On June 18, 2024, Plaintiff texted Union President Ms. Wilma Thomas and was informed her concerns regarding labor relations were under investigation.

14. On June 25, 2024, Union President Ms. Wilma Thomas requested Plaintiff compile an email with proof of her allegations. Plaintiff sent this email at 1:55 PM .

15. On June 25, 2024, at 3:21 PM, Ms. Kristen Onesko called Plaintiff, accusing her of dishonesty about an OVI charge. Plaintiff had disclosed this charge, and after insistence, Ms. Onesko admitted to the disclosure but claimed dishonesty on Yale's application. Ms. Onesko claimed that Plaintiff was notified over a month prior of this adverse action. Plaintiff explained that she never received any notification and

requested Ms. Onesko to resend it. Ms. Onesko refused, saying, "Why? I am telling you now." Plaintiff explained that she had been trying to get a hold of her and sent numerous emails and phone calls. Ms. Onesko denied ever receiving any of them and further denied blocking Plaintiff's emails, stating, "I don't know how to do that." Plaintiff then claimed this was retaliation for voicing her concerns to the Union President, to which Ms. Onesko responded, "This is absurd." When Plaintiff requested to be connected with Ms. Onesko's supervisor, she refused. She further refused to consider the circumstances and repeatedly said, "There is nothing I can do." Ms. Onesko was void of human emotion and completely callous to the Situation.

16. Plaintiff's Ford profile still lists the job offer as "under consideration," showing no changes were made after the offer was made, indicating retaliatory actions. For any other job that I applied for and did not receive, I was immediately notified and my Ford profile immediately reflected the decision.

17. On June 25, 2024, Plaintiff sent a detailed complaint to CEO Jim Farley on multiple social media accounts, receiving no response

18. On June 26, 2024, Plaintiff contacted Karen Ewers at Yale Background Screening Services, requesting a copy of her application. Ms. Ewers, following Ford's instructions, refused to provide even a blank copy, suggesting complicity in the retaliatory actions.

19. On June 26, 2024, Plaintiff sent two emails to HR Supervisor Marshal Frisco detailing the events and

requesting complaint escalation information, receiving no response. 20. On June 26, 2024, Plaintiff reported to Ford Motor Company Speakup Hotline (Report #360486566), which was ignored.

21. On June 27, 2024, Plaintiff retained an attorney to send a formal complaint to Director of HR, Tyra Grier-Coleman, receiving no response.

22. On July 2, 2024, Ford's Counsel, Mr. Randy Enoch, confirmed receiving the complaint and reviewing it.

23. On July 8, 2024, Mr. Enoch stated he reviewed the matter and requested a phone discussion. He claimed a pre-adverse action was sent on June 28th. Plaintiff, now representing herself, requested further communication directly and any additional information.

24. July 9th, 2024, Mr. Enoch responded inadequately to Plaintiff's previous emails and complaints. These were very clearly written, and his response had nothing to do with the complaints. He requested more time to gather information.

25. On July 10, 2024, Plaintiff met with NLRB Field Attorney Kelly Freeman, filing a charge against Ford Motor Company for Unfair Labor Practices. A copy of the charge was mailed to Ms. Onesko and received by Mr. Enoch.

26. Dates of continued retaliation and discrimination are June 14, 2024, July 9, 2024, July 17, 2024, and July 22, 2024, by rejecting and refusing to consider any of my previous or additional applications for employment.

## V. Legal Claims

- **Title VII of the Civil Rights Act of 1964:**
  - Ford Motor Company's actions constituted employment discrimination based on race and sex, violating Title VII. If I had been a male African American, my complaints and concerns would have been addressed right away. This clear difference in treatment highlights the discriminatory practices Ford Motor Company engaged in, negatively affecting my employment opportunities and overall experience.
- **Ohio Revised Code § 4112.02(I):**
- Ford's retaliation against Plaintiff for opposing unlawful practices violated Ohio Revised Code § 4112.02(I). This statute prohibits discrimination against any individual for opposing unlawful discriminatory practices, making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under the relevant sections. Plaintiff faced retaliation after raising concerns with the Union President about Ford's lack of communication, failure to provide an adverse action letter, and blocking her emails. Following her formal complaints to the EEOC and NLRB, Ford further retaliated by retracting all other job offers and refusing to consider her for any future employment opportunities. This pattern of retaliatory behavior underscores the severity and impact of Ford's actions against Plaintiff for her opposition to

their unlawful practices.

- **Fair Credit Reporting Act (FCRA):**
- Ford failed to provide the required adverse action notice, violating FCRA. Further proof of the mishandling of this situation is that Ford only sent the required adverse action letter after I retained an attorney and filed a complaint. This highlights their unfair practices and lack of compliance with legal requirements.

- **Whistleblower Protection Act:**
  - Ford retaliated against me for reporting legal violations, which is protected under various anti-retaliation laws. I reported the lack of communication, the missing adverse action letter, and my emails being blocked to the Union President. After I filed complaints with the EEOC and NLRB, Ford retaliated by retracting all other job offers and refusing to consider me for future positions.

- **Aiding and Abetting Discrimination and Retaliation:**
- Yale's refusal to provide me with copies of my application, following Ford's instructions, clearly shows they were aiding and abetting Ford's retaliatory actions. This is a violation under both federal and state laws. Ohio Revised Code § 4112.02(J) makes it illegal to help or encourage any discriminatory practice. Federal laws also hold parties accountable for assisting in discrimination or retaliation. Yale's actions directly contributed to the unfair

treatment I faced, making them complicit in Ford's retaliation against me.

### • **Promissory Estoppel:**

- Ford extended a job offer to Plaintiff, which she reasonably relied upon, making significant life decisions based on this offer. However, Ford retracted the offer without providing the required FCRA adverse action notice, leading Plaintiff to believe the offer was still valid. This resulted in substantial harm, including financial instability, a damaged credit score, and emotional distress. Plaintiff's reliance on the job offer was justified, and Ford's retraction without proper notice caused severe consequences for her and her family, constituting a clear case of promissory estoppel.

## VI. Impact on Plaintiff's Life

I was terminated from my employment upon notifying my job of my acceptance with Ford. The following months of uncertainty greatly affected my and my children's quality of life as I was not able to be 100% present in caring for them because I was so worried about the future. If Ford would have followed the FCRA requirements, some of this could have been avoided.

I was an established professional in Northeast Ohio and carefully considered the decision to switch careers, believing a position at Ford would benefit my family long-term. My father spent 40 years in good standing with Ford, and I never thought I would be making a huge mistake.

Ford's actions have severely impacted my life and that of my five children. Trusting Ford's offer led to the depletion of my savings, a drop in my credit score, utility disconnections, and reliance on public assistance. The stress, anxiety, sleepless nights, and uncertainty have derailed my plans to co-sign for cars for my teenagers and purchase our first home.
This experience has shattered my faith in the corporate world, where accountability is severely lacking. As a single mother, this is terrifying and has significantly increased my anxiety about providing for my children's future. The months of uncertainty

greatly affected my and my children's quality of life as I was not able to be 100% present in caring for them because I was so worried about the future and depressed about the present.

My hope is to ensure that no one else has to go through this in the future and that Ford is held accountable to serve as a reminder to treat everyone fairly, adhere to proper FCRA requirements, and enforce disciplinary actions against employees who fail in these areas.It doesn't matter how large your corporation is, everyone deserves to be treated fairly.

Ford may not have been impacted by their actions, but their actions have directly and severely impacted me and my family. Due to the intentional carelessness, blocking of my communication, and lack of accountability,and given the severity of Ford's actions, I am requesting that the punitive damages be substantial enough to deter future misconduct.

**Relief Requested**

Plaintiff requests the following relief:

1. Compensatory damages for financial and emotional harm.
2. Punitive damages to ensure future accountability.
3. Back pay for lost wages and benefits.
4. Front pay for future lost earnings.
5. Pain and suffering for emotional distress.
6. Injunctive relief to prevent further discrimination and retaliation.

## VIII. Conclusion

34. Plaintiff, Sarah Buntura, respectfully requests that this Court grant the relief sought and any other relief deemed just and proper by the Court.

Respectfully submitted,

*Sarah D. Buntura*

**Sarah Buntura**
4390 Southwick Blvd
Brunswick, Ohio 44212[216-352-8569
SarahBuntura@gmail.com