**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SARAH BUNTURA, | Case No. 1:24-cv-1313 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jennifer Dowdell Armstrong |
| FORD MOTOR COMPANY, *et al.*, | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiff Sarah Buntura filed this case without a lawyer against Ford Motor Company and Yale Background Screening Services. She alleges that Ford retracted an offer of employment after her background check revealed a prior conviction for operating a vehicle while impaired, which Ford claims she did not disclose on her employment application. Further, Plaintiff alleges that Ford and Yale employees treated her unprofessionally after retraction of the offer. She asserts claims under Title VII, 42 U.S.C. § 2000e, Section 4112.02 of the Ohio Revised Code, the Fair Credit Reporting Act, and the Whistleblower Protection Act. Also, she includes a claim for promissory estoppel. Her complaint seeks a award of compensatory and punitive damages.

Plaintiff also filed an application to proceed *in forma pauperis* (ECF No. 2). The Court **GRANTS** that application.

## STATEMENT OF FACTS

At this stage of the proceedings, the Court takes the following allegations in the complaint as true and construes them in Plaintiff's favor.

Ms. Buntura alleges that she applied for a position as an hourly production team member at the Brook Park, Ohio Ford plant on March 13, 2024. She states that she received an offer of employment in a letter from Kristen Onesko on March 20, 2024. That offer appears to have been contingent on Ms. Buntura successfully passing a background check, which Yale conducted for Ford. Ms. Buntura indicates that she responded to the letter within three days, accepting the offer and providing information requested for the background check. One week later, Ms. Buntura sent an email to Onesko asking about the status of her background check. She states that Onesko did not respond to her email. Ms. Buntura contacted Yale on April 9, 2024 and learned from a Yale employee that her background check was completed. Ms. Buntura followed up with Onesko to relay this information, but again Onesko did not respond.

On May 6, 2024, Ms. Buntura emailed Wilma Thomas, the president of the union representing workers at the Ford plant, to express her concerns about the lack of communication. She copied Onesko on the correspondence only to discover that Onesko had blocked her emails. She sent two additional emails to Thomas before getting a response from Onesko on June 25, 2024. Onesko indicated that Ms. Buntura received notice a month earlier that Ford withdrew the contingent offer of employment due to Ms. Buntura's failure to disclose a conviction for operating a

2

vehicle while intoxicated as part of her Yale background check. Onesko advised that Ford viewed the omission as an act of dishonesty. Ms. Buntura responded that she had not, in fact, received notification of the withdrawal of the offer of employment and argued that the decision was made in retaliation for contacting the union president. Onesko dismissed that allegation as "absurd" and stated that there was nothing Ms. Buntura could do to obtain reconsideration of her application for employment.

Ms. Buntura attempted to report Onesko's behavior to Ford but did not receive the response she was seeking. On the same day she spoke with Onesko, Ms. Buntura tried to contact Ford's chief executive officer through multiple social media accounts. He did not respond. She contacted Yale and asked for a copy of her background check. They refused her request. On the following day, June 26, 2024, she sent two emails to the human resources manager at Ford detailing the events and requesting intervention or an escalation of her complaint regarding the lack of communication from Onesko. She did not receive a response.

On June 27, 2024, Ms. Buntura retained an attorney to send a formal complaint to Ford's director of human resources. Ford's attorney also received that correspondence and confirmed receipt of it. He advised Ms. Buntura that pre-adverse action notification was sent to her on June 28, 2024. She claims that Ford's attorney did not respond adequately to her concerns about the manner in which Onesko treated her. Finally, she states that she met with a field attorney from the National Labor Relations Board to file a charge of unfair labor practices. She does not indicate

what action, if any, the NLRB Attorney took with respect to her charge. She contends that Ford rejected additional employment applications that she submitted on June 14, 2024, July 9, 2024, July 17, 2024, and July 22, 2024.

## STATEMENT OF THE CASE

Plaintiff asserts six causes of action. First, she indicates that she brings claims under Title VII, 42 U.S.C. § 2000e for employment discrimination on the basis of race and sex. She does not dispute the conviction for operating a vehicle while intoxicated. Instead, she appears to focus on Ford's response to the treatment she received from Onesko. In explaining this claim, she states, "If I had been a male African American, my complaints and concerns would have been addressed right away. This is [a] clear difference in treatment [and] highlights the discriminatory practices Ford Motor Company engaged in, negatively affecting my employment opportunities and overall experience." (ECF No. 1, PageID #6.)

Plaintiff asserts two related claims under Section 4112.02 of the Ohio Revised Code. First, she claims that Ford retaliated against her for contacting the union president by refusing to communicate with her, blocking her emails, and failing to provide her promptly with an adverse action letter. She states that, after she filed a complaint with the Equal Employment Opportunity Commission and the NLRB, Ford further retaliated against her by refusing to consider her for future employment opportunities. She claims that this action violates Section 4112.02(I). Second, she claims that Yale "aided and abetted" Ford's discriminatory actions in violation of Section 4112.02(J) by refusing to provide her with a copy of her background check.

4

Plaintiff brings her fourth claim under the Fair Credit Reporting Act. She does not indicate a particular section of statute on which she relies for her cause of action. She states that Ford failed to provide her with an adverse action notice and that this failure violated the Act.

For her fifth claim, Plaintiff asserts that Ford retaliated against her for reporting lack of communication, the missing adverse action letter, and the blocked emails. She claims that "anti-retaliation laws" protect against these actions. (ECF No. 1, PageID #7.) She contends that Ford violated the Whistleblower Protection Act.

Finally, Plaintiff asserts a claim against Ford for promissory estoppel. She claims that Ford extended her an offer of employment on which she relied to her detriment. She claims that retraction of this job offer without adequate notice caused her substantial financial harm and emotional distress.

## ANALYSIS

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim on which relief can be granted or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact where it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

5

A cause of action fails to state a claim on which relief may be granted when it lacks "plausibility in the cComplaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### I. Federal Claims

The Court begins by examining Plaintiff's claims under federal law.

### I.A. Title VII

Plaintiff alleges that Ford discriminated against her on the basis of race and gender in violation of Title VII when it did not respond quickly to her complaints about Onesko's treatment of her. Plaintiff contends that, if she were an African American man, Ford would have immediately addressed her complaints.

As an initial matter, Ohio is an employment-at-will State. *Painter v. Graley*, 70 Ohio St. 3d 377, 1994-Ohio-334, 639 N.E.2d 51, 55. In such a jurisdiction, an individual may be denied employment or, once hired, terminated for any reason or no

6

reason at all, provided that the employment decision is not based on a criterion, such as race, color, religion, sex, national origin, disability, or age, which are prohibited by law. *Plona v. United Parcel Serv., Inc.*, 558 F.3d 478, 482 (6th Cir. 2009). Moreover, employers are not required to be courteous or polite during that process, as long as they are not engaged in acts of discrimination. Title VII is not "a general civility code for the American workplace." *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000) (quoting *Oncale v. Sundowner Offshore Servs., Inc*, 523 U.S.75, 80 (1998)). It bars discrimination in employment decisions, but it does not extend so far as to require employers or supervisors to behave professionally.

In this case, Plaintiff bases her Title VII claim on the treatment she received from Ford after complaining about Onesko's behavior. Within a two day period of time after learning that she was not going to be hired, Plaintiff contacted Ford chief executive officer through multiple social media accounts, contacted Yale and asked for a copy of her application, sent two emails to Ford's human resources manager detailing the events at issue and seeking to escalate her complaint against Onesko, sent a formal complaint to the director of human resources at Ford, and met with an attorney at the NLRB. She claims that Ford did not address these complaints in a timely manner and maintains that, if she were a male African American, her complaints would have been addressed more quickly. Plaintiff alleges no facts, whatever her race, that she was actually treated differently than other individuals in the same situation. Plaintiff's Title VII claim is not based on allegations of racial or gender discrimination in the hiring process but rather on the lack of civility and

7

professionalism she claims the she experienced. For these reasons, Plaintiff fails to state a claim for relief under Title VII.

### I.B. Fair Credit Reporting Act and Whistleblower Protection Act

Plaintiff's two remaining claims under federal law have no apparent relevance to the facts alleged. The Fair Credit Reporting Act governs the reporting and dissemination of consumer credit information by credit reporting agencies. It "ensure[s] fair and accurate credit reporting, promote[s] efficiency in the banking system, and protect[s] consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Nothing about this case has anything to do with credit reporting.

Similarly, Plaintiff refers to the Whistleblower Protection Act. The federal Whistleblower Protection Act applies only to federal employees. 5 U.S.C. § 2302(a)(2)(C). Since Plaintiff is not a federal employee, and no Defendant is a federal agency, Plaintiff does not state a claim under the Whistleblower Protection Act.

### II. State-Law Claims

Plaintiff also brings three claims under State law. Federal courts have limited jurisdiction. Unlike State trial courts, federal courts do not have general jurisdiction to review all claims or questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, federal courts only have the authority to decide cases that the Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

(internal citation omitted). There are two potential bases for jurisdiction over Plaintiff's State-law claims. The Court examines each in turn.

**II.A. Diversity Jurisdiction**

In cases with more than $75,000 in dispute, "citizens of different states" may bring their State-law claims in federal court. 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, a plaintiff must establish that she is a citizen of one State and all of the defendants are citizens of others. The citizenship of a natural person equates to her domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). A corporation is a citizen of its State of incorporation and the State in which it has its principal place of business. 28 U.S.C. §1332(c)(1). A limited liability company has "the citizenship of each partner or member." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). If a member of a limited liability company, is itself a limited liability company with multiple members, the federal court needs to know the citizenship of each 'sub-member' as well." *Id.*; *V & M Star, LP v. Centimark Corp.* 596 F.3d 354, 356 (6th Cir. 2010).

Plaintiff has not pled sufficient facts to demonstrate the citizenship of Defendants, and she has not established the jurisdictional amount in controversy.

*Citizenship.* Plaintiff is a resident of Brook Park, Ohio. Ford is incorporated in Michigan and Delaware and maintains its principal place of business in Michigan. S2 Verify, LLC acquired Yale Background Screening. Plaintiff indicates that S2 Verify maintains a principal place of business in Georgia; however, the complaint does not provide the citizenship of all of members of the limited liability company. She has the burden to do so to allow the Court to determine whether it has

9

jurisdiction. *See Washington v. Sulzer Orthopedics, Inc.*, No. 03-3350, 2003 WL 22146143, at *1 (6th Cir. Sept. 16, 2003).

*Amount-in-Controversy*. Even if no member of S2 Verify is an Ohio resident, the Court lacks diversity jurisdiction because Plaintiff has not established the amount-in-controversy requirement. In her complaint, Plaintiff alleges only in general terms that she seeks compensatory and punitive damages. She does not specify the amount of damages she is seeking. In the Court's experience, taking Plaintiff's allegations as true, her claims fail to place an amount in controversy that would allow the Court to exercise diversity jurisdiction.

**II.B. Supplemental Jurisdiction**

Without diversity jurisdiction, generally speaking, the Constitution and Congress have given federal courts authority to hear claims arising under State law only where they "form part of the same case or controversy" as any claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). The federal courts have this supplemental jurisdiction over State-law claims only if the related federal claims remain pending. Generally, when the federal claims are at an end, the court should decline to exercise supplemental jurisdiction. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In deciding whether to exercise supplemental jurisdiction, the district

10

court should consider factors such as "comity, judicial economy, convenience, and fairness." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620–21 (6th Cir. 1999). "[G]enerally '[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011).

After reviewing the record in this matter, the Court sees no reason to deviate from the normal rule counseling that State-law claims should be litigated in State court upon the conclusion of litigation over federal claims. This case remains in the early stages, minimizing any prejudice to the parties. It now only presents State law claims which the Ohio courts should have the opportunity to adjudicate. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining claims.

## CONCLUSION

For these reasons, the Court **DISMISSES** this action pursuant to 28 U.S.C. § 1915(e). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this decision could not be taken in good faith

**SO ORDERED.**

Dated: October 9, 2024

J. Philip Calabrese
United States District Judge
Northern District of Ohio